## DEAN M. ANDERSON v. BREEZY POINT ESTATES AND OTHERS.
## PALMER J. HERMUNDSLIE AND OTHERS, RESPONDENTS.

168 N. W. (2d) 693.

June 6, 1969—Nos. 41445, 41446.

*Fitzpatrick, Larson & Fitzpatrick* and *S. G. Fitzpatrick,* for appellant.
*Nolan, Alderman & Holden* and *Robert Alderman,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

Frank T. Gallagher, Justice.

Appeal from a judgment and from an order denying plaintiff's

motion for new trial in an action brought to foreclose a mechanics lien.

Breezy Point Estates, a partnership consisting of defendants Donald Eastvold, Virginia Simms Eastvold, Darwin K. Holian, and Jerome D. Lenz, was engaged in the promotion of undeveloped land in the vicinity of Pelican Lake in Crow Wing County. In connection therewith the partners sought to purchase from defendants Arthur J. Weaver and Harriet Weaver a tract of land called the Cree Bay Addition.[1] On February 3, 1965, Mr. and Mrs. Weaver, as fee owners of the tract, entered into an earnest money purchase agreement to sell the tract to Breezy Point Estates. The purchase price was $250,000, of which $5,000 was paid at that time. The tract, bounded on the east by Pelican Lake, encompassed several small lakes, including Cree Bay. The purchase was conditional upon the buyer's obtaining a permit from the state to build a channel from three small lakes to Big Pelican Lake. If it could not obtain such permit, the agreement would be void and the partnership would be entitled to a refund of the earnest money. Some of the land described in the purchase money agreement was to be platted immediately, the first portion of which was along channels between Pelican Lake and Cree Bay. Then the buyer, upon payment of $50,000, could have the lots released in accordance with a formula set out in the agreement.

In February 1965 Jerome D. Lenz, one of the partners, contacted plaintiff, Dean M. Anderson, and requested that he make a determination of the elevations of Pelican Lake and Cree Bay to establish the feasibility of a channel. Plaintiff did so and subsequently prepared the charts and exhibits which accompanied the request for a channel permit. In April 1965 plaintiff put a crew of men to work surveying the Cree Bay tract. The work consisted of exactly locating roads, designing and locating lots, marking out the perimeter and turning points of the tract, drawing maps, preparing a plat, and presenting it to the Board of County Commissioners of Crow Wing County. Field work performed by plaintiff's crew involved cutting brush to get surveying

---

[1] It is the engineering services in developing the Cree Bay Addition to Breezy Point Estates that give rise to this litigation.

site lines, brushing out and staking the Cree Bay Circle road, establishing the location for the channel, constructing permanent, iron-pipe monuments at lot corners and along street boundaries, and placing wooden stakes with flags at the permanent monument sites.

The field work was completed on July 6, 1965, and on July 18, plaintiff presented the plat to the county board. On June 16, 1965, the Weavers executed a contract for deed selling the Cree Bay tract to Breezy Point Estates. The contract used a metes-and-bounds description prepared by plaintiff. On September 29, plaintiff filed for record his mechanics lien statement for land-surveying services listing the improvement as "[s]urveying and platting of land." The first item was furnished February 4 and the last item July 6, 1965. The lien statement claimed a lien on property described as "Cree Bay Addition to Breezy Point Estates." The bill of particulars claimed $8,018 for services rendered. Plaintiff states in his brief that he expended 1,143 hours of work.

In the interval between the date the field work was completed and the date the lien was recorded, a number of the lots platted by plaintiff were sold by Breezy Point. The complexity of the situation is indicated by the fact that in addition to Breezy Point and the Weavers the lawsuit names 116 other defendants.

Following a trial before the court without a jury as a companion action to another lien foreclosure, plaintiff was granted a personal judgment against Breezy Point Estates and the members of the partnership, but his claims for a personal judgment against the Weavers and a lien upon the Cree Bay Addition were denied.

Plaintiff raises only one issue on this appeal: Whether a surveyor who performs services such as plaintiff performed in the subdivision of land into salable lots is entitled to a mechanics lien against the owner and subsequent purchasers under Minn. St. 514.01, et seq.

Section 514.01, which is the basic provision of this state's mechanics lien law, states:

"Whoever contributes to the improvement of real estate by performing labor, or furnishing skill, material or machinery *for any of the*

*purposes hereinafter stated,* * * * shall have a lien upon the improvement, and upon the land on which it is situated or to which it may be removed, for the price or value of such contribution; * * *." (Italics supplied.)

The section then lists the following purposes as being within the statute:

(1) The erection, alteration, repair, or removal of any building, fixture, bridge, wharf, fence, or other structure thereon.

(2) Grading, filling in, or excavating the same.

(3) Clearing, grubbing, or first breaking.

(4) Furnishing and placing soil or sod, or furnishing and planting trees, shrubs, or plant materials or performing labor in any of these.

(5) Digging or repairing any ditch, drain, well, foundation, cistern, reservoir, or vault on the land.

(6) Laying, altering, or repairing any sidewalk, curb, gutter, paving, sewer, pipe, or conduit in or upon the land or the adjoining half of any highway, street, or alley upon which the property abuts.

The cases decided under this statute make it clear that the statute is remedial in nature and is to be liberally construed in favor of workmen and materialmen. In that connection, in Johnson v. Starrett, 127 Minn. 138, 141, 149 N. W. 6, 7, L. R. A. 1915B, 708, 710, the court stated in effect that, despite conflicting decisions of other tribunals, no narrow or limited construction of our mechanics lien law should be adopted by the courts; that labor and industry should not be hampered by technical or harsh interpretations of what was intended to be a just law for the benefit of industrial pursuits and tending materially to the building of cities and towns; and that one whose property is enhanced in value by the labor of others should be made to respond in some way by payment and full satisfaction for what he has secured. We adhered to these views in Armco Steel Corp. v. Chicago & N. W. Ry. Co. 276 Minn. 133, 138, 149 N. W. (2d) 23, 26. However, it is equally clear from the cases that mechanics liens are purely creatures of statute and the rights of the parties are governed entirely by the language of the statutes. M. E. Kraft Ex-

cavating & Grading Co. v. Barac Const. Co. 279 Minn. 278, 283, 156 N. W. (2d) 748, 751.

In this context it must be noted that the Armco case involved a procedural question—whether the claimant's variations from the specified procedure would defeat the lien. There was no question raised as to whether the work done was within the statute. In the present case, on the other hand, whether the work done creates a right to a lien under the statute is precisely the question raised.

By the terms of § 514.01 it is not enough that the real estate be improved and that the claimant contribute labor, skill, material, or machinery. The claimant must have contributed one or more of these things *for the purposes stated in the statute*. Therefore, the burden upon one seeking to establish a right to a lien is three-fold: He must show that the real estate has been improved, that he supplied labor or materials, and that the labor or materials were supplied for one of the purposes stated in the statute.

It is obvious from a reading of the statute that surveying and platting of land is not one of the specific purposes listed in the statute. Therefore, assuming without deciding that the work of plaintiff here constituted an improvement on the real estate involved and that he expended labor or materials, it is still necessary to fit plaintiff's work within one of the other stated purposes if he is to qualify for a lien.

While we have in the past considered and rejected the claim that the work of a surveyor constitutes the "actual and visible beginning of the improvement on the ground" within the provisions of Minn. St. 514.05 so as to establish a priority among secured claimants, M. E. Kraft Excavating & Grading Co. v. Barac Const. Co. *supra*, and Rueben E. Johnson Co. v. Phelps, 279 Minn. 107, 156 N. W. (2d) 247, we have not passed upon the question raised by this appeal. In both of the above cases the issue was priority of claims, there being no dispute as to the validity of the claims against the original owners of the property, and the effect of the survey was raised by parties other than the surveyor with the contention the survey constituted the actual and visible beginning of an improvement in the form of an apartment house.

Other jurisdictions have considered the right of a surveyor to a mechanics lien, but, because of the wide variance in statutes, these decisions are of little help. See 57 C. J. S., Mechanics' Liens, § 4. For services similar to those in this case, a California District Court of Appeals held a civil engineer was entitled to a lien on the property in Nolte v. Smith, 189 Cal. App. (2d) 140, 11 Cal. Rptr. 261, 87 A. L. R. (2d) 996. However, the California mechanics lien law, Code of Civil Procedure, § 1181, et seq., lists licensed land surveyors among those entitled to a lien and, in addition to listing specific purposes protected by the act, uses the phrases "other work of improvement" and "otherwise improves" which the court construed to include subdividing for sale. The case therefore has no bearing on the construction to be given the Minnesota statute.

If the work done by plaintiff in this case is to come within any of the purposes listed in § 514.01, it must be "clearing, grubbing, or first breaking." While this provision has not as yet been construed by this court, we do not think it necessary to examine its possible scope in detail to conclude that it does not apply to this case. The clearing of brush by plaintiff here was wholly incidental to the performance of the work for which he was hired and was restricted to those areas where the vegetation hampered his ability to conduct the survey. He was in no sense hired to clear the property. Similarly, we do not believe the placement of monuments can be classed as a first breaking within the meaning of the statute.

The determination that a mechanics lien lies only where the work done is for certain specified purposes has been made by the legislature and we are not free to disregard that determination. Plaintiff here is clearly entitled to recover for the considerable work done in connection with the development of Breezy Point Estates; but since he is not within the legislatively determined limits of the mechanics lien law, the trial court properly held that his recovery must be on the basis of a personal judgment against the partners by whom he was employed.

Affirmed.